IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| TAMMY V. DOTSON, | ) Civil Action No. 3:10-881-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| AVON PRODUCTS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, Tammy V. Dotson ("Dotson") filed this action on April 8, 2010. Defendant, Avon Products, Inc. ("Avon") filed a motion to dismiss on May 3, 2010. On May 17, 2010, Dotson filed an amended complaint in which she alleges claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").[1] Additionally, she alleges a claim for intentional infliction of emotional distress ("IIED"). Avon filed a motion to dismiss the amended complaint on June 3, 2010.[2] Dotson filed a response on June 17, and Avon filed a reply on June 28, 2010.

## **STANDARD FOR MOTION TO DISMISS**

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

[2]Avon's original motion to dismiss appears to now be moot, as Dotson filed an amended complaint and Avon filed a motion to dismiss the amended complaint.

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, __ U.S. at __, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

## FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF[3]

1. Dotson was initially employed with Avon from July to December 1998 in Christiansburg, Virginia.

2. After moving to South Carolina, Avon rehired Dotson as a Stand-In Manager on approximately February 16, 2004.

3. Dotson was placed in a full-time District Sales Manager position on May 24, 2004.

4. In July 2005, Dotson was diagnosed with Hodgkins's Lymphoma Disease. She notified Avon of her condition.

5. Dotson began chemotherapy in August 2005.

6. Her condition debilitated her to the extent that she was unable to work and carry on daily life activities, including performing manual tasks, walking, and learning.

---

[3]These facts are taken from the amended complaint.

7.  Due to her illness, Dotson suffered from severe fatigue, depression, and pain which caused her to be unable to work and perform other daily life activities, such as performing manual tasks, walking, and learning.

8.  Avon was aware of Dotson's condition and symptoms.

9.  Dotson requested and was granted a leave of absence from work as a result of her illness.

10. After Dotson was released to return to work, her supervisor scheduled her to return to work, assigned her a territory, and assigned her a company car.

11. Avon and Dotson's coworkers held a "return to work" party for her.

12. Immediately prior to her scheduled return,[4] Dotson was told by Avon that she would need to retake initial hiring tests (even though she was currently employed) which Avon uses for new hires.

13. Dotson retook and passed the exams.

14. After passing the exams, Dotson's supervisor told her that Avon had a new policy regarding "rehires" and Dotson would not be returning to work, even though she was not a "rehire."

15. Dotson's supervisor and other members of management involved in the decision to refuse to allow her to return to work were aware of her condition.

16. Avon never communicated with Dotson regarding her status, nor did they officially terminate her.

17. Avon continued to issue paychecks to Dotson.

---

[4] Dotson has not specified the date she was released to work or the date of her scheduled return.

3

18.  Dotson was qualified and able to perform the essential functions of her position upon her release and return to work.

19.  Dotson filed a Charge of Discrimination with the EEOC on October 24, 2006.

20.  Avon immediately stopped paying Dotson her benefits and salary. The company did not communicate or explain this to her.

## DISCUSSION

Avon contends that Dotson's amended complaint should be dismissed because she fails to meet the Twombly and Iqbal standards as to her disability claims; her retaliation claim fails as a matter of law because the adverse employment action occurred prior to the time she engaged in protected activity; and her IIED claim is barred by the statute of limitations, she fails to allege facts plausibly suggesting the required elements of an IIED claim, and her IIED claim is preempted by the ADA. Dotson argues that her disability discrimination claim satisfies all applicable pleading requirements, Avon fails to demonstrate that her retaliation claim is not proper, her IIED claim should be equitably tolled, she has alleged facts plausibly suggesting the required elements of an IIED claim, and her IIED claim is not preempted.

A.  ADA - Disability Discrimination

Dotson alleges that Avon discriminated against her based on her disability of cancer by treating her as a rehire rather than a current employee, refusing to communicate with her regarding her status, and terminating her. Avon contends that Dotson's "vague allegations and conclusions" fail to meet the standards set out in Iqbal and Twombly. Specifically, Avon argues that Dotson failed to allege facts plausibly suggesting that she had an actual disability at the time the alleged adverse actions occurred and that she was discriminated against "because of" a disability.

4

The parties, citing Martinson v. Kinney Shoe Corp., 104 F.3d 683 (4th Cir. 1997), appear to agree that the to establish a prima facie case under an ADA discrimination theory, Dotson must show that: (1) she has a "disability" as defined by the ADA; (2) she is a "qualified individual" for the employment in question; and (3) her employer discriminated against her "because of" her disability.[5]

    (1)    Disability

Avon contends that Dotson has not set out a plausible claim that she had a disability because although she was diagnosed with cancer previously, she fails to set out facts suggesting that she suffered from an actual disability, was regarded as disabled by Avon, or had a record of disability at the time the alleged adverse actions occurred.

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C.A. § 12102. To be substantially limited with respect to a major life activity, a plaintiff must be unable to perform a variety of tasks central to most people's daily lives. See Toyota Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200-201 (2002); Rohan v. Networks Presentations LLC, 375 F.3d 266, 274 (4th Cir. 2004). The phrase "substantially limits" "sets a threshold that excludes minor impairments from coverage under the ADA." EEOC v. Sara

---

[5] It is questionable whether the framework set out in Martinson or that set out in Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001) is applicable. In Haulbrook, the Fourth Circuit stated that to establish a prima facie case under the ADA a plaintiff must show that: (1) she is within the ADA's protected class (i.e. that she was under a "disability"); (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met the employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. See Haulbrook v. Michelin N. Am., Inc., 252 F.3d at 702. It is not necessary to address this at this time, however, as Plaintiff has set out sufficient facts to state a plausible claim under the Martinson framework.

5

Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001)(citing Sutton v. United Air Lines, 527 U.S. 471, 486-88 (1999)). [6]

In the light most favorable to her, Dotson has alleged sufficient facts to state a plausible claim that she had, was regarded as having, and/or had a record of having a disability. Avon does not appear to dispute that Dotson had cancer and that it interfered with some of her major life activities. The company, however, appears to argue that once Dotson was released to work she no longer had a disability. While merely having a diagnosis of cancer[7] may not make a person "disabled" under the ADA, Dotson claims that her cancer substantially limited the major life activities of performing manual tasks, walking, and learning. It also may be possible that Dotson's cancer was cured or was in remission such that she no longer had a disability. See, e.g., Farrish v. Carolina Commercial Heat Treating, Inc., 225 F.Supp.2d 632, 636 (M.D.N.C. 2002)(plaintiff, who had cancer, was not disabled for purposes of ADA coverage because her cancer was in remission at the time of her termination); Alderice v. American Health Holding, Inc., 118 F.Supp.2d 856, 863 (S.D. Ohio 2000)(plaintiff

---

[6]The ADA was amended in 2008 to more clearly define such terms as "disability" and "substantially limits." See ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553. The amendments did not become effective until January 1, 2009, and Congress did not express its intent for these changes to apply retroactively. Although the Fourth Circuit has not expressly ruled on this issue, other circuits considering the issue have found that the 2008 ADA amendments are not retroactive. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n. 3 (1st Cir. 2009): EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469-70 n. 8 (5th Cir. 2009); Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565-67 (6th Cir. 2009); Fredricksen v. United Parcel Serv., Co., 581 F.3d 516, 521 n. 1 (7th Cir. 2009); Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009); Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 939-42 (D.C.Cir. 2009). In a recent unpublished case, the Fourth Circuit noted that other circuits have found that the 2008 ADA amendments are not retroactive and found no reason to disagree with their conclusion. Shin v. University of Md. Med. Sys. Corp., No. 09-1126, 2010 WL 850176, at *5 (4th Cir. Mar.11, 2010). The incidents alleged in this action took place well before these amendments took place. As a result, the rational of Toyota and Sutton applies.

[7]See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. at 197.

6

admitted her cancer was in remission at the time she was terminated such that her temporary condition was not found to be substantially limiting); Adams v. Rice, 531 F.3d 936, 944 (D.C. Cir. 2008)(plaintiff, whose doctor sent a letter to her employer stating that her early stage breast cancer was successfully treated and was in complete remission with an excellent prognosis, did not have an actual disability at the time the allegedly discriminatory employment decisions occurred). It is not, however, possible to determine this from the facts alleged. More importantly, it is plausible from the facts alleged that Dotson's condition (which also included depression) continued to interfere with some of her major life activities.

Additionally, Dotson has alleged a plausible claim that Avon regarded her[8] as disabled at the time the alleged adverse actions were taken. After she was scheduled to return to work, assigned a territory, and assigned a company car, Avon required Dotson to retake initial hiring tests, failed to communicate with her, did not allow her to return to work, and effectively terminated her.

Finally, Dotson has alleged a plausible claim that she had a record of[9] a disability. Dotson alleges that Avon was aware of her conditions and symptoms, and she requested and was granted a leave of absence from work as a result of her illness. She also alleges that her supervisor and other members of management who refused to allow her to return to work were aware of her condition. Amended Complaint, Paras. 15-17 and 23.

---

[8]The phrase "regarded as having such impairment" has been defined, in pertinent part, by the regulations as meaning that the person "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(l)(1)

[9]To show that an employer had a record of the plaintiff's impairment, she must show that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).

7

(2) "Because of" a Disability

Avon contends that Dotson fails to make a sufficient showing to plausibly suggest that she was discriminated against "because of" her disability as she made only a bare assertion of this and has not alleged that the ultimate decisionmaker knew she had a disability within the meaning of the ADA. Dotson has alleged sufficient factual material to state a plausible claim that Avon took the alleged adverse actions because of her disability. She alleges that Avon had knowledge of her substantially limiting impairments, granted her a leave of absence, and knew of her condition at the time she attempted to end her leave of absence, but required her to take new hire tests, refused to communicate with her, and would not allow her to return to work. Although Dotson fails to name who the decisionmaker was, she has alleged that her supervisor and the members of management involved in the decision to refuse to return her to work knew of her disability.

B.     ADA-Retaliation

In her complaint, Dotson appears to allege that Avon retaliated against her by not allowing her to return to work and by stopping her benefits and the payment of her salary after she engaged in the protected activities. She alleges that the protected activities were her voicing her opposition to Avon's actions regarding her employment following her medical treatment and her filing a Charge with the EEOC. Avon contends that Dotson's claim that it refused to allow her to return to work in retaliation for engaging in protected activity fails as a matter of law because her protected activity occurred after the alleged adverse activity (refusing to allow her to return to work). In her response, Dotson argues that the stopping of benefits and salary constituted a retaliatory action on the part of Avon that occurred immediately after her protected activity such that causation has been pleaded by

8

temporal proximity.    In its reply, Avon concedes that Dotson may go forward for now with her retaliation claim based on stopped payments.

To establish a prima facie case of retaliation under the ADA, an employee must demonstrate that:

1) the employee engaged in protected activity;

2) the employer took some adverse employment action against the employee; and

3) a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII).

In her reply, Dotson does not appear to dispute that the adverse action of refusing to allow her to return to work occurred prior to her protected activity. Thus, it appears that this claim should be dismissed as Dotson has not alleged a plausible causal connection between the protected activity and the retaliatory action. The parties, however, appear to agree that Dotson has plead a plausible claim of retaliation as to her allegation that Avon retaliated against her by stopping her benefits and payment of wages in response to the filing of her EEOC Charge.

C.    IIED

Dotson alleges that Avon subjected her to IIED by discriminating against her, refusing to allow her to resume her employment, and failing to communicate with her. Avon contends that this claim should be dismissed because Dotson's claim is barred by the applicable statute of limitations,

9

she fails to allege facts plausibly suggesting the required elements of an IIED claim,[10] and her claim is preempted by the ADA.

It is recommended that Dotson's IIED claim be dismissed because it is barred by the applicable statute of limitations and is preempted by the ADA. The statute of limitations governing a claim for IIED is three years. See S.C. Code Ann. § 15-3-530; Parkman v. University of S.C., 44 F. App'x 606, 619 (4th Cir. 2002). Dotson's claims occurred prior to the filing of the EEOC Charge on October 24, 2006, or immediately after the filing of the Charge. Thus, the events giving rise to Dotson's IIED claim occurred more than three years before the date this action was filed (April 8, 2010), such that her IIED claim is barred by the applicable statute of limitations.

Dotson argues that the statute of limitations should be tolled because it would be fundamentally unjust not to do so as she brought her EEOC Charge based on the same conduct as her IIED claim, and she could not file this action until she exhausted her administrative remedies. "Equitable tolling is a nonstatutory tolling theory which suspends a limitations period." Hooper v. Ebenezer Senior Servs. & Rehab. Ctr., 687 S.E.2d 29, 32 (S.C. 2009)(internal quotations omitted). "The party claiming the statute of limitations should be tolled bears the burden of establishing

---

[10]To prove a claim of IIED under South Carolina law, a plaintiff must establish the following elements:
> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;
> (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community";
> (3) the actions of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distressed suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it."

Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)(quoting Vicnire v. Ford Motor Credit Co., 401 A.2d 148 (Me. 1979))(internal citations omitted); see also Wright v. Sparrow, 381 S.E.2d 503, 505 (S.C. Ct. App. 1989).

sufficient facts to justify its use." Id. Furthermore, equitable tolling is reserved for "extraordinary circumstances." American Legion Post 15 v. Horry County, 674 S.E.2d 181, 184 (S.C.Ct.App. 2009). Plaintiff has not shown that the statute of limitations should be equitably tolled. The Fourth Circuit and district courts within the Fourth Circuit have rejected arguments that the statutes of limitations for state law tort claims should be equitably tolled because the claims arose from the same facts as a discrimination claim that was being administratively exhausted. See, e.g., McNeal v. Montgomery County, 307 F.App'x 766, 772 (4th Cir. 2009)("McNeal's claims for constructive discharge, tortious interference with contract and intentional infliction of emotional distress, although arising from the same set of circumstances, are completely independent from his Title VII claims. Thus the time for filing a lawsuit as to these causes of action was not tolled when McNeal pursued his Title VII administrative remedies."); Knickman v. Prince George's County, 187 F.Supp.2d 559, 564 (D.Md. 2002)(dismissing the plaintiff's IIED claim and other state law tort claims on the defendant's 12(b)(6) motion because the claims were barred by the applicable statutes of limitation and explaining that "[p]ursuit of an administrative complaint, while a necessary prerequisite to filing a Title VII action, does not affect the limitations period for filing other claims"); see also Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462-66 (1971)(statute of limitations for § 1981 claim not tolled while plaintiff was pursuing Title VII administrative claim even though the actions were based on the same facts).

Dotson's IIED claim should also be dismissed because it is preempted by the ADA. She alleges that her IIED claim arises out of the same conduct that is the basis of her EEOC Charge and that her ADA and IIED causes of action "are attached." Amended Complaint, Paras. 51-52. The IIED "was intended as a remedy for tortious conduct 'where no remedy previously existed.'" Doe

11

v. Erskine College, No. 8:04-23001-RBH, 2006 WL 1473853, at *14 (D.S.C. May 25, 2006)(finding that the plaintiff's IIED claim was preempted by Title IX because the basis for most of the acts that plaintiff alleged constituted outrageous conduct also served as the basis for the plaintiff's Title IX claim); see also Todd v. South Carolina Farm Bureau Mut. Ins. Co., 321 S.E.2d 602, 613 (S.C. Ct. App. 1984), quashed on other grounds, 336 S.E.2d 472 (S.C. 1985).

D.     Punitive Damages

Avon argues that Dotson's request for punitive damages should be dismissed due to a clear lack of any plausible basis for such relief.[11] Specifically, Avon argues that punitive damages are not available for a retaliation claim under the ADA and she has not plead that Avon engaged in a discriminatory practice with malice or with reckless indifference to her federally protected rights as required under the ADA.[12] In response, Dotson argues that Twombly and Iqbal do not place any heightened pleading standards on Rule 8(1)(3) such that when a plaintiff lists damages that she seeks, all that is required is a "demand for the relief sought."

It is recommended that Avon's motion to dismiss Dotson's request for punitive damages be denied as premature at this time. Although, pursuant to Twombly and Iqbal, a complaint must contain sufficient factual matter to state a plausible claim to relief, it is unclear that this extends to

---

[11] "Punitive damages are available when the discriminatory action was conducted 'with malice or with reckless indifference to the federally protected rights' of the plaintiff." Golson v. Green Tree Fin. Servicing Corp., 26 F. App'x 209, 213 (4th Cir. 2002)(quoting 42 U.S.C.A. § 1981a(b)(l)). "The terms 'malice' and 'reckless indifference' refer to 'the employer's knowledge that it may be acting in violation of federal law.'" Id. (quoting Kolstad v. American Dental Ass'n, 527 U.S. 526, 535 (1999)).

[12] As it is recommended that Dotson's IIED claim be dismissed, it is not necessary to address whether she has asserted sufficient facts to state a plausible claim for punitive damages as to that claim.

the expression of damages. Here, Dotson has expressed punitive damages as a demand in accordance with Rule 8(a)(3), Fed.R.Civ.P. ("A pleading that states a claim for relief must contain:....(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.").

## **CONCLUSION**

Based on the foregoing, it is recommended that Defendant's motion to dismiss (Doc 6) be **denied** as moot. It is recommended that Defendant's motion to dismiss Plaintiff's Amended Complaint (Doc. 13) be **denied**, **in part**, as to Plaintiff's disability discrimination claim, as to Plaintiff's retaliation claim that Avon stopped paying her benefits and salary in retaliation for her filing a Charge with the EEOC, and as to Plaintiff's demand for punitive damages. It is further recommended that Defendant's motion (Doc. 13) be **granted**, **in part**, as to Plaintiff's retaliation claim that she was not allowed to return to work and as to her IIED claim.[13]

Joseph R. McCrorey
United States Magistrate Judge

February 8, 2011
Columbia, South Carolina

---

[13] Avon, citing Feeley v. Total Realty Mgmt., 660 F.Supp.2d 700, 715-716 (E.D.Va. 2009) and Robinson v. Morgan Stanley, No. 06 C 5158, 2008 WL 4874459, at *7 (N.D.Ill. June 18, 2008), argues that dismissal should be with prejudice because Dotson has had "multiple" attempts to sufficiently state her claims. In Feeley, however, the plaintiffs had already filed three complaints, one of which was over 300 pages and counsel had responded affirmatively at a hearing to a question of whether he had pled all of the pertinent information that they possessed as to the litigation. 660 F.Supp.2d at 715. In Robinson, the court had previously dismissed Robinson's defamation and fraud claims in their entirety without prejudice to refiling in accordance with the court's order. Robinson v. Morgan Stanley, 2008 WL 4874459, at *1. In Ostrzenski the Fourth Circuit noted that a district court should not dismiss a complaint with prejudice under Rule 12(b)(6) without first giving the plaintiff leave to amend. Ostrzenski v. Seigel, 177 F.3d at 252-53.