IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Tammy V. Dotson, | ) | C/A No.: 3:10-881-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Avon Products, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, plaintiff Tammy V. Dotson ("Plaintiff")
sues her former employer, Avon Products, Inc. ("Defendant"), alleging claims pursuant
to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"). This
matter comes before the court on the parties' cross motions for summary judgment.

Plaintiff filed her motion for summary judgment on December 15, 2011. [Entry
#52]. Defendant filed a response to the motion on January 9, 2012 [Entry #56], and
Plaintiff filed a reply on January 19, 2012. [Entry #61]. Defendant filed its motion for
summary judgment on January 13, 2012. [Entry #58]. Plaintiff filed a response on
January 30, 2012 [Entry #62], and Defendant filed a reply on February 21, 2012. [Entry
#66].

The court held a hearing on both motions on April 19, 2012, and the motions are
now ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motions for summary judgment are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court deny Plaintiff's motion for summary judgment and grant in part and deny in part Defendant's motion for summary judgment.

I.    Factual Background

Plaintiff first worked for Defendant for approximately six months in 1998 as a District Sales Manager in Christianburg, Virginia. [Entry #45-1 at 53; Entry #45-3 at 66]. Her supervisor was Rick Nichols. *Id.* She resigned from her position in December 1998 when her husband relocated to South Carolina. *Id.* In February 2004, she was re-hired by Defendant to serve as a Stand-In Manager in Columbia, South Carolina. *Id.* She was again supervised by Mr. Nichols who had also relocated to South Carolina. *Id.* In May 2004, Plaintiff was promoted to full-time District Manager Associate. [Entry #48-1 at 23]. On January 17, 2005, Plaintiff became the District Sales Manager ("DSM") for District No. 1404. *Id.* at 25.

Plaintiff took a leave of absence beginning in April 2005 based on her physician's recommendation related to her diagnosis of Chronic Mononuecleosis and positive test results for Chronic Epstein Barr Virus. [Entry #45-3 at 67]. She applied for short-term disability benefits, which, though initially denied, were ultimately approved on July 14, 2005, with a retroactive date of April 11, 2005. [Entry #45-1 at 41]. Plaintiff was

diagnosed with Hodgkin's Lymphoma Disease in July 2005. [Entry #45-3 at 67].

Plaintiff received a letter on Avon letterhead from registered nurse Fay Thompson on or about September 15, 2005. [Entry #45-3 at 24]. The letter confirmed Plaintiff's short-term disability leave of absence and stated, "[w]e understand that your first day out of work was July 14, 2005." *Id.* The letter further stated, "[i]f you remain disabled for 12 months, or until **July 14, 2006**, you will become inactive and will need to reapply for employment with Avon." *Id.* (emphasis in original). Plaintiff began a long-term disability leave with associated benefits on October 10, 2005. [Entry #45-3 at 4].

On April 5, 2006, Plaintiff's oncologist faxed a letter to Mr. Nichols stating Plaintiff would be able to return to work as of May 1, 2006.[1] [Entry #62-2 at 3]. Plaintiff notified Mr. Nichols that she could return to work and he invited her to a staff meeting on April 27, 2006, which she attended. [Entry #46-1 at 24; Entry #45-1 at 25].

At the April 27, 2006 meeting, Mr. Nichols notified Plaintiff that she had to go through the hiring process again. [Entry #45-3 at 69]. Judith Wright, Human Resources Manager, determined that Plaintiff had been out for over one year and would need to go through the rehiring process. [Entry #48-1 at 118–20]. Defendant contends this requirement was in keeping with its policy on extended absences, which required an employee out for more than a year to go through the reapplication process. [Entry #48-1 at 19]. Defendant further asserts Plaintiff became an inactive employee as of April 11,

---

[1] Defendant contends the letter was dated April 13, 2006, and argues that Plaintiff incorrectly and with no evidentiary support states the letter was dated April 5, 2006. [Entry #56 at 6, n.7]. There are two versions of the letter. One was sent to Mr. Nichols on April 5, 2006 [Entry #62-2 at 3], and the other was sent to Broadspire Services, Inc. on April 13, 2006. [Entry #45-2 at 28].

2006. [Entry #50-2 at 3]. Plaintiff contends reapplying was unnecessary because she was "still employed by Avon" and that Mr. Nichols assured her "this was simply a technicality." [Entry #45-3 at 69–70].

Plaintiff completed the rehiring process, but was ultimately not allowed to return to work. Defendant states it decided not to "rehire" Plaintiff [Entry #50-6 at 4–5], while Plaintiff characterizes the action as a termination. [Entry #45-3 at 70]. Defendant alleges Plaintiff was not rehired because the DSM position she previously held had been modified to a Sales Business Development Manager ("SBDM") position for which Plaintiff was not sufficiently qualified. [Entry #50-6 at 2–4]. Defendant admits other DSMs who remained actively employed were "grandfathered" into the SBDM position. [Entry #62-9 at 2–3]. Although Mr. Nichols recommended that Plaintiff return to work, Harold Watkins, Defendant's Area Sales Director and Mr. Nichols' supervisor, made the final decision not to "rehire" Plaintiff. [Entry #46-1 at 18, 26–27].

Although Plaintiff did not return to work for Defendant, she was reactivated in its payroll system and began to receive paychecks and employment benefits in May 2006. [Entry #45-1 at 47]. Plaintiff did not know why she was receiving the payments and did not contact Defendant to find out. *Id.* at 47–48. She continued to receive payments and benefits until November 2006. *Id.* at 47. Defendant contends the payments were made to Plaintiff in error and totaled in excess of $16,000. [Entry #56-8 at 3].

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2006 [Entry #1 at ¶ 27], a few weeks before Defendant stopped sending her paychecks. She thereafter filed this lawsuit alleging

discrimination and retaliation under the ADA, as well as a state law claim of intentional infliction of emotional distress. [Entry #1]. Defendant filed a counterclaim for the amounts paid to Plaintiff from May 2006 to November 2006. [Entry #22]. The court dismissed Plaintiff's claim for intentional infliction of emotional distress on March 14, 2011, and limited her ADA retaliation claim to a claim based on cessation of pay and benefits following her complaint to the EEOC. [Entry #20].

II.    Discussion

    A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985).

B.     Analysis

Plaintiff and Defendant have both moved for summary judgment on Plaintiff's ADA discrimination claim. Defendant has also moved for summary judgment on Plaintiff's retaliation and punitive damages claims and, to the extent asserted, Plaintiff's reasonable accommodation claim under the ADA. Neither party has moved for summary judgment on Defendant's counterclaim for the payments and benefits allegedly provided in error to Plaintiff.

1.	ADA Discrimination Claim

In order to make out a prima facie case under the ADA,[2] a plaintiff must show that: (1) she is within the ADA's protected class; (2) she was subjected to an adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.[3]  *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001).  The Fourth Circuit has held that the causation and burden-shifting standards applicable in Title VII cases as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), are also applicable in cases brought pursuant to the ADA "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action."  *Ennis v. Nat'l Assoc. of Business and Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995).  Once the plaintiff states a prima facie case of disability discrimination, the burden shifts to the employer to offer evidence that the adverse action was taken for a legitimate, non-discriminatory reason.  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  If the defendant meets this burden, the plaintiff must show by a preponderance of

---

[2] The ADA was amended effective January 1, 2009, after the operative facts in this case occurred.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. Congress did not expressly intend for these changes to apply retroactively, and the court must decide this appeal based on the law in place prior to the amendments.  *See Schneider v. Giant of Maryland, LLC*, 389 Fed. App'x 263, 267 n. 3 (4th Cir. 2010).

[3] In their briefs, the parties analyze the case pursuant to the prima-facie-disability-discrimination elements set forth in *Perry v. Computer Scis. Corp.*, 429 Fed. App'x 218, 220 (4th Cir. 2011).  The undersigned elects to analyze the case pursuant to the elements articulated in the often-cited *Haulbrook* case rather than to adopt the test articulated in the unpublished *Perry* decision because the *Perry* test appears to set the evidentiary bar higher for establishing a prima facie case.

the evidence that the proffered reason was pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S, 133, 143 (2000).

a. Prima Facie Case

(1) Plaintiff is Disabled Under the ADA

The initial issue before the court is whether Plaintiff is a qualified individual with a disability under the ADA. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the ADA, a disability is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The determination of whether an individual is disabled is an individualized inquiry, particular to the facts of each case. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). The question of whether a plaintiff meets the definition of disabled "is a question of law for the court, not a question of fact for the jury." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).

To establish a claim of actual disability, a plaintiff must establish that she was substantially limited in performing a major life activity at the time of the alleged discriminatory acts. *See Settle v. S.W. Rodgers Co., Inc.*, No. 98-2313, 1999 WL 486643, at *3 (4th Cir. July 12, 1999). Relying on the uncontested fact that Plaintiff was cleared to return to work as of May 1, 2006, Defendant argues Plaintiff cannot show that she was actually disabled when she attempted to return to employment. [Entry #58-1 at 13].

Plaintiff counters that, although she was cleared to work, she still suffered from her disability at "the time of her termination and when she was released to return to work." [Entry #62 at 16].

It is undisputed that Plaintiff suffered from Hodgkin's lymphoma cancer. [Entry #62 at 2; Entry # 58-1 at 4]. It is also undisputed that Plaintiff's oncologist did not clear her to return to work until May 1, 2006. [Entry #62 at 3; Entry #58-1 at 18]. Finally, it is undisputed that Plaintiff was notified on April 27, 2006, that she would have to reapply for her position with Defendant. [Entry #62 at 4; Entry #58-1 at 7]. The parties have focused their briefing on Plaintiff's disability, or lack thereof, after she was cleared to return to work and was not rehired or was terminated by Defendant. The undersigned, however, finds that Defendant's decision to require Plaintiff to reapply was also an adverse employment decision. *See, e.g., Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (finding an adverse employment action where employee was assigned to a new position and required to reapply for her flex-time schedule). Without that decision, Plaintiff would have been able to return to her job. [Entry #62-9 at 2–3]. At the time the decision was made and communicated to Plaintiff, she had not yet been cleared to return to work and was thus limited in performing the major life activity of working. *Taylor v. Fed. Express Corp.*, 429 F.3d 461, 463 (4th Cir. 2005) (assuming without deciding that working is a major life activity). Defendant admits that Plaintiff "may have been diagnosed with cancer and disabled at one point in time" and suggests the end of Plaintiff's actual disability was when she was cleared to return to work. [Entry #58-1 at 14]. Consequently, the undersigned recommends a finding that Plaintiff was a

qualified individual with a disability under the ADA at the time Defendant made the pivotal employment decision requiring her to reapply.

The undersigned declines to address whether Defendant regarded Plaintiff as having an impairment or whether Plaintiff had a record of such impairment. Doing so would require the court to assess the credibility of the witnesses, which is unnecessary in light of its finding of actual disability. Who the decision-makers were, what they knew regarding Plaintiff's condition at the time of the adverse employment actions, and whether Plaintiff continued to be limited in any activity of daily living after May 1, 2006, are issues better left to a jury.[4]

(2)    Plaintiff Experienced an Adverse Employment Action

The parties do not dispute that Plaintiff was required to reapply for her position. Defendant contends she was not rehired. Plaintiff contends she was terminated. Regardless of the verbiage, Plaintiff was not allowed to return to work. The parties do

---

[4] The undersigned has reviewed and considered the supplemental authority Defendant submitted by motion on May 8, 2012 [Entry #74], but finds the non-binding case out of the Southern District of Ohio unavailing. In *Nilles v. Givaudan Flavors Corp.*, the plaintiff 'took several weeks of leave due to 'sickness'' and was not terminated until more than six months after he last took leave. No. 1:10-919, 2012 WL 1537613, at *5, 7 (S.D. Ohio May 1, 2012). Furthermore, plaintiff told only the human resources manager that he had multiple sclerosis and the human resources manager played no role in the decision to terminate the plaintiff's employment. *Id.* at *4. Under these facts, the court found there was no evidence that the decision maker who terminated the plaintiff had knowledge of the plaintiff's disability. *Id.* These facts are distinguishable from the facts of the present case where Plaintiff had been out for a year on long-term disability, was not allowed to return to employment immediately thereafter, and Mr. Watkins, the decision maker, admits to knowing Plaintiff had been on disability leave. [Entry #47-1 at 22].

not contest that an adverse employment action occurred, and the undersigned recommends finding that Plaintiff has satisfied this element of her prima facie case.

(3)     Whether Plaintiff was Satisfactorily Performing Her Job Duties is an Issue of Material Fact

Plaintiff was on medical leave when the adverse employment actions occurred, but there is a dispute regarding whether Plaintiff was performing her job satisfactorily when she was last actively employed by Defendant. Defendant contends it was moving to the new SBDM structure and that Plaintiff was not rehired because she "experienced a number of performance shortcomings . . . in 2004 and 2005" and her production numbers were "unremarkable." [Entry #58-1 at 19]. Plaintiff argued at the hearing on these motions that her production numbers were solidly average and produced the relied-upon figures for the court's review. [AVON-1336–AVON-1346]. Plaintiff further notes that Defendant has admitted she would have been "grandfathered" into the SBDM position if she had remained "actively employed." [Entry #62 at 29; Entry #62-9 at 2–3]. This admission supports an inference that Plaintiff was satisfactorily performing her job prior to her medical leave.

Both parties have presented evidence to support their respective positions on Plaintiff's job performance. Taken in the light most favorable to each party, there is insufficient evidence to establish as a matter of law that Plaintiff was or was not satisfactorily performing her job. Consequently, the undersigned concludes that a question of material fact exists as to this element of Plaintiff's prima facie case, making summary judgment on Plaintiff's ADA discrimination claim inappropriate.

11

          (4)      Whether The Circumstances Surrounding the Adverse
                     Employment Actions Raise a Reasonable Inference of
                     Unlawful Discrimination

Because the parties analyzed this case under the ADA discrimination framework set forth in *Perry*, they did not brief whether the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.  In light of the material issues of fact related to the ADA discrimination claim noted elsewhere in this report and recommendation, it is unnecessary for the undersigned to make findings regarding this element without the benefit of the parties' briefing.

          b.      Whether Defendant's Stated Reasons for the Adverse
                    Employment Actions are Pretextual is an Issue of Material
                    Fact

The heart of the parties' motions is whether Defendant has offered a legitimate, non-discriminatory reason for requiring Plaintiff to reapply and ultimately deciding not to "rehire" her.  Defendant states that company policy required Plaintiff to reapply for her position after she had been inactive for one year.  [Entry #58-1 at 23].  Defendant further states it did not hire the Plaintiff for the newly-created SBDM position because she was not the best candidate for the position.  *Id.* at 27.  Defendant denies that Plaintiff's alleged disability was a factor in the decision.  *Id.* at 19.

Plaintiff contends that Defendant has given four different reasons for her "termination": (1) Mr. Nichols allegedly told Plaintiff that Ms. Wright, the Human Resources Manager, had "convinced [Mr. Watkins] there is not good success rate when you bring people back; (2) a human resources data change form dated November 2006 noted Plaintiff was terminated because there was "no open market for her" at the time she

wanted to return to work; (3) Defendant did not think Plaintiff's skills aligned with the new SBDM position; and (4) company policy required any employee who was inactive for more than a year to reapply. [Entry #61 at 11]. Plaintiff argues that these allegedly inconsistent reasons given at different times are clear evidence of pretext. *Id.* at 12. Plaintiff challenges the existence of a company policy requiring her to reapply, stating that Defendant "has not and cannot identify or produce such a policy, despite multiple requests." [Entry #62 at 26]. Plaintiff also contends Defendant's reliance on the transition to the alleged "substantially different" SBDM job is pretextual because the evidence demonstrates the job, though different in title, required the same qualifications. *Id.* at 27–28.

To demonstrate pretext, Plaintiff must provide the court with admissible evidence that Defendant's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted).

The determination of whether the reasons behind Defendant's actions were non-discriminatory or pretextual is fraught with issues of material fact. Most significant to the undersigned is whether Defendant had a policy requiring employees to reapply after one year of inactive employment. In support of the existence of the policy, Defendant relies on the deposition testimony of Ms. Watkins and Mr. Wright and on the September 15, 2005 letter to Plaintiff which states, "[i]f you remain disabled for 12 months, or until **July 14, 2006**, you will become inactive and will need to reapply for employment with Avon." [Entry #62-1 at 106 (emphasis in original)]. Defense counsel admitted at the

hearing on these motions that the extended leave policy "lives in letters" like those sent to Plaintiff and that Defendant has no independent written policy mandating reapplication.

Viewed in the light most favorable to Plaintiff, the evidence does not conclusively establish the existence of a policy requiring Plaintiff to reapply after being on leave for more than one year. Furthermore, a question of fact exists as to whether Plaintiff rightly relied on the July 14, 2006 date set forth in the September 15, 2005 letter. Although Defendant contends the July date was a mistake on which Plaintiff was not entitled to rely [Entry #58-1 at 26], the letter may also be plainly read that Plaintiff must reapply **either** if she is disabled for 12 months **or** until July 14, 2006.

Viewed in the light most favorable to Defendant, the undersigned cannot state as a matter of law that no policy existed and that the reason for reapplication cited by Defendant was pretextual. The September 15, 2005 letter states that Plaintiff's employment would become inactive after some period of time and she would be required to reapply for employment with Defendant. The meaning of the letter and the significance of the inclusion of the July 14, 2006 date are issues of fact precluding summary judgment on the ADA discrimination claim.

As both parties admit in their briefing, numerous other material issues of fact exist in this case. [Entry #56 at 10–11; Entry #62 at 12–13]. For example, whether there was any material difference between the DSM position and the SBDM position; whether Plaintiff was qualified for the SBDM position; and whether other applicants hired for the SBDM position were less qualified than Plaintiff.

Because genuine issues of material fact exist with regard to Plaintiff's ADA discrimination claim when viewed either in the light most favorable to Plaintiff or Defendant, the undersigned recommends denying both parties' motions for summary judgment on this cause of action.

2.    Retaliation Claim

Defendant has also moved for summary judgment on Plaintiff's retaliation claim. The court previously limited the retaliation claim to a claim based on the cessation of pay and benefits following her complaint to the EEOC.  [Entry #20 at 5].  Defendant argues Plaintiff was not entitled to the pay and benefits she received for the six months after she attempted to return to her job and, thus, cannot demonstrate the cessation of that income was an adverse action sufficient to support a retaliation claim.  [Entry #58-1 at 31–32]. Plaintiff counters that she must merely show that "her employer took an action against her which **a reasonable employee would find materially adverse**."  [Entry #62 at 31 (emphasis in original)].  She further argues that the loss of a paycheck and benefits would be materially adverse to a reasonable employee whether or not she was entitled to the payment and benefits.  *Id.*

To establish a prima facie claim of retaliation under the ADA, Plaintiff must show: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action. *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 392 (4th Cir. 2001).

Plaintiff cannot satisfy the second element of a prima facie claim of retaliation. By her own admission, on May 12, 2006, she was "notified [she] would not be allowed to

return to work." [Entry #45-2 at 2]. Plaintiff has repeatedly characterized the events of May 2006 as a termination. [Entry #62 at 8 ("Dotson was never provided any notice in writing of her termination or the reason for it."); Entry #45-1 at 16 ("DSMs were hired [] after I was terminated that were less qualified than me . . . .")]. Although Plaintiff contends she does not know why she continued receiving the pay and benefits [Entry #62 at 31], she does not allege that she received them because she was still employed by Defendant. Regardless of whether she was terminated or not rehired, as Defendant contends, the undisputed fact remains that Plaintiff no longer worked for Defendant after May 2006. As such, she was not entitled to the pay and benefits at issue. Because she was not entitled to them, their cessation cannot constitute an adverse event for purposes of establishing a retaliation claim. *See Pueschel v. Peters*, 340 Fed. App'x 858, 861–62 (4th Cir. 2009) (affirming dismissal of retaliation claim under Title VII and the Rehabilitation Act where plaintiff did not establish she was entitled to the benefit forming the basis for the alleged adverse action).

Plaintiff's response to Defendant's motion correctly articulates that she must show "her employer took an action against her which **a reasonable employee would find materially adverse**." [Entry #62 at 31 (emphasis in original)]. Plaintiff, however, wrongly emphasizes the reasonable employee component and disregards the requirement that the adverse action be taken by her employer. Here, Defendant was not Plaintiff's employer, and Plaintiff, therefore, is unable to state a claim of retaliation.

For the foregoing reasons, the undersigned recommends Defendant's motion to dismiss Plaintiff's retaliation claim be granted.

3.    Punitive Damages Claim

Defendant also moves for summary judgment on Plaintiff's request for punitive damages, contending there is no evidence to show Defendant acted with malice or reckless indifference to Plaintiff's federally-protected rights.   [Entry #58-1 at 33]. Plaintiff argues she is entitled to move forward with her punitive damages claim because a jury could find that Defendant either deliberately disregarded or did not make a good-faith effort to comply with the ADA and thereby acted in reckless disregard of her federally-protected rights thereunder.  [Entry #62 at 32–35].

To recover punitive damages under the ADA, a plaintiff must show that the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of [the plaintiff]."  42 U.S.C. § 1981a(b)(1). Plaintiff is proceeding on a reckless-indifference theory, which requires her to show: (1) that Defendant's decision maker discriminated in the face of a perceived risk that the decision would violate federal law; (2) that the decision maker was a principal or served the employer in a managerial capacity; (3) that the decision maker acted within the scope of his employment in making the challenged decision; and (4) that the employer failed to engage in good-faith efforts to comply with the law.  *E.E.O.C. v. Fed. Express Corp.*, 513 F.3d 360, 372 (4th Cir. 2008).  Defendant does not contest the second and third elements. Whether Plaintiff has satisfied the first and fourth elements is currently before the court.

Harold Watkins is an undisputed decision maker in this case.  [Entry #58-1 at 8]. Mr. Watkins admitted that he was familiar with the ADA, but that it was "not a consideration in terms of how we do business."  [Entry #47-1 at 8].  He further admitted

that when he made the decision that Plaintiff should not return to work, he knew that she had been on disability leave and had been unable to perform her job. *Id.* at 22. Despite these admissions, when asked whether he had conducted "any kind of analysis or thought process to determine if [Plaintiff's] disability may have been considered a disability under the ADA," Mr. Watkins responded, "No, never. Not at all." *Id.*

Viewed in the light most favorable to Plaintiff, these facts are sufficient to support a jury finding that Mr. Watkins acted despite a perceived risk that such actions would violate the ADA. The Fourth Circuit has previously "found evidence sufficient to support a jury finding of a perceived risk in cases where the employer's managerial agent had 'at least a rudimentary knowledge' of the import of a federal anti-discrimination statute." *Fed. Express Corp.*, 513 F.3d at 372–73 (collecting cases and quoting *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 460 (4th Cir. 2002)). Mr. Watkins's combined knowledge of the ADA and Plaintiff's history of disability leave therefore satisfies the first element of a punitive damages claim.

The fourth element—that Defendant failed to engage in good-faith efforts to comply with the law—is likewise satisfied by the foregoing facts. Mr. Watkins's testimony that he never considered the ADA in making his decision not to rehire Plaintiff sufficiently demonstrates an absence of good faith to comply with the law for Plaintiff's punitive damages claim to survive summary judgment. The undersigned, therefore, recommends denying Defendant's motion for summary judgment on punitive damages.

4. Reasonable Accommodation Claim

In her response to Defendant's motion for summary judgment, Plaintiff alleges that Defendant had discriminated against her by failing to provide a reasonable accommodation in not extending her leave time by less than a month after she purportedly became inactive. [Entry #62 at 20]. Defendant argues in reply that Plaintiff had not included a reasonable accommodation claim in her EEOC charge or her amended complaint and her attempted claim at this stage of the litigation should be disregarded. [Entry #66 at 5–6]. Defendant further argues that a reasonable accommodation claim would substantively fail because Plaintiff failed to request an accommodation. *Id.* at 6–7.

Plaintiff clarified at the hearing on the pending motions that she did not intend to assert a reasonable accommodation claim. Rather, Plaintiff contends Defendant's alleged failure to provide an accommodation is factual evidence supporting Defendant's alleged discrimination. For this reason, it is not necessary for the court to make a ruling regarding the purported reasonable accommodation claim other than to note that no such claim is asserted in this action.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Plaintiff's motion for summary judgment [Entry #52] be denied. The undersigned further recommends that Defendant's motion for summary judgment [Entry #58] be granted as to Plaintiff's retaliation claim and denied as to Plaintiff's ADA discrimination and punitive damages claims.

IT IS SO RECOMMENDED.

Shiva V. Hodges

May 10, 2012                          Shiva V. Hodges
Columbia, South Carolina             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).