IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Tammy V. Dotson, | ) | C/A No. 3:10-881-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Avon Products, Inc., | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, Plaintiff, Tammy V. Dotson ("Dotson"), seeks recovery from her former employer, Avon Products, Inc. ("Avon"), for alleged discrimination and retaliation in employment. Dotson originally asserted three causes of action: (1) discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) retaliation for reporting that discrimination; and (3) a state law claim for intentional infliction of emotional distress. The state law claim was dismissed by order entered March 14, 2011, leaving the federal discrimination and retaliation claims for further proceedings. *See* Dkt. No. 20 (order on motion to dismiss).

The matter is before the court on the parties' cross-motions for summary judgment. Dkt. Nos. 52, 58. For the reasons set forth below, Dotson's motion is denied and Avon's motion is granted in part and denied in part. The matter shall proceed to trial under the schedule set forth at the conclusion of this order.

**PROCEDURAL BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, this matter was referred to a United States Magistrate Judge for pre-trial proceedings and a Report and

Recommendation ("Report").[1]  On May 10, 2012, the Magistrate Judge issued a Report recommending that Dotson's motion for summary judgment be denied and Avon's motion for summary judgment be granted in part and denied in part. Dkt. No. 77. More specifically, the Report recommends that Avon's summary judgment motion be granted as to Dotson's retaliation claim, but denied as to her claim for discrimination. The Report also recommends that Avon's motion be denied to the extent it seeks to preclude recovery of punitive damages.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Avon filed an objection challenging the Report to the extent it recommended denial of Avon's motion. Dkt. No. 79. Dotson filed an objection challenging the Report to the extent it recommended that Avon's motion be granted. Dkt. No. 78. Neither party objected to the recommendation that Dotson's motion be denied. Both parties filed responses to the opposing party's objection. Dkt. Nos. 80, 81.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report

---

[1]  The matter was initially referred to Magistrate Judge Joseph R. McCrorey, and later reassigned to Magistrate Judge Shiva V. Hodges.

and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

### I.     Dotson's Motion for Summary Judgment

Neither side objected to the recommendation that Dotson's motion for summary judgment be denied. The court has, therefore, reviewed the Report for clear error with respect to Dotson's motion. Finding none, the court adopts the Report's recommendation that Dotson's motion be denied as well as the supporting rationale.

### II.     Avon's Motion for Summary Judgment

Dotson objects to the Report to the extent it recommends that Avon's motion for summary judgment be granted. Avon objects to the Report to the extent it recommends that Avon's motion be denied. The court has, therefore, reviewed the Report *de novo* with respect to all recommendations regarding Avon's motion for summary judgment.

#### A.     ADA Discrimination Claim

The Report recommends that Avon's motion for summary judgment be denied as to Dotson's ADA discrimination claim. This recommendation and Avon's objection address two related alleged adverse actions: (1) Avon's treatment of Dotson as an inactive employee/rehire (requiring her to go through the rehiring process) when she sought to return to work after being on disability leave for more than twelve months; and (2) Avon's subsequent decision not to rehire Dotson.

3

The court agrees with Avon that the two decisions must be analyzed separately. The court further agrees that Avon is entitled to partial summary judgment that treatment of Dotson as an inactive employee/rehire did not violate the ADA. In this regard, the court declines to adopt the Report.

The court reaches the opposite conclusion as to Avon's ultimate decision not to rehire Dotson. For reasons stated in the Report, the court concludes that there is sufficient evidence to allow Dotson's discrimination claim to proceed to trial on the decision not to rehire.

### 1.     Elements of *prima facie* case

The parties disagree as to proper *prima facie* test to apply to Dotson's discrimination claim. The Report applied a modified version of the four-element test in *Haulbrook v. Michelin. N. Am.*, 252 F.3d 696 (4th Cir. 2001). Report at 7. Under *Haulbrook*, a plaintiff must show that: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook*, 252 F.3d at 702. The Report modified the second and fourth factors to fit the allegations of this case by substituting "adverse employment action" for "discharge." Report at 7. It also modified the third factor to refer to whether Dotson was meeting her employer's legitimate expectations *when she last worked*. Report at 11. Although she did not advance it in her earlier memoranda, Dotson now favors this test. *See* Dkt. No. 80 at 3-4 (citing cases in this district which have applied *Haulbrook*).

Avon argues that the court should use the three-element test from *Perry v. Computer Sci. Corp.,* 429 Fed. App'x 218 (4th Cir. 2012). Under *Perry*, a plaintiff must show that: (1) she is

4

disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of the disability. *Perry*, 429 Fed. App'x at 220. Presumably, the first factor would also be satisfied if a plaintiff otherwise fell within a protected class such as having a history of or being viewed as having a disability.

In an unpublished decision issued after objections and responses were filed, the Fourth Circuit applied the *Haulbrook* elements in an ADA case and stated that it had previously "noted its preference for using [this] test . . . in the ADA context." *See Fields v. Verizon Services Corp.*, Slip. Op. No. 11-2093 at 9-10, n.4 (Aug. 9, 2012) (referring to the test announced in *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), and including *Haulbrook* in a list of cases applying the "*Ennis* test"). This comment and the factual similarities between *Fields* and this action persuade the court that it should apply *Haulbrook* here.[2]

### 2.    Treatment of Dotson as a Rehire

To the extent Dotson bases her discrimination claim on her treatment as an inactive employee required to go through the rehiring process, she is challenging her treatment under Avon's leave policy. As explained below, that challenge fails at either the second or fourth prong of the *Haulbrook* test depending on the point at which application of the policy is tested. Alternatively, it fails at the pretext test for the same reason it fails at the fourth prong.

---

[2] Like Dotson, the plaintiff-employee in *Fields* was out on disability leave at the time of the challenged adverse action (a termination through a reduction in force). Like the Report in this case, the Fourth Circuit looked to the plaintiff's performance prior to disability leave in addressing the third factor (whether the plaintiff was meeting her employer's legitimate expectations "at the time of discharge"). In both respects, the decision in *Fields* supports application of the *Haulbrook* test to Dotson's claim that Avon discriminated against her by treating her as inactive and requiring her to go through the rehiring process.

**Leave Policy.**  Avon's leave policy allowed employees on extended leaves of absence to return to work within twelve months without going through the rehiring process.[3]   The primary evidence of the policy is the letter Avon sent to Dotson in mid-September 2005.

Avon concedes that there is no written policy other than letters such as those sent to Dotson, which Avon maintains are consistent in allowing employees to return to work without going through the rehire process if they return within twelve months of their last day worked.  Dotson has not presented any evidence to the contrary such as that Avon treated any other employee more generously with respect to this policy.

It is significant here that employees do not have an inherent right to return to work after completion of a leave of absence.  Such rights have, however, been granted by statute, such as the Family Medical Leave Act ("FMLA") which provides employees twelve *weeks* of protection for self-care.[4]  Rights to return may also be granted by contract or employment policy, such as Avon's admitted policy in this case, which granted twelve *months* of protection.

The court does not, therefore, start with a presumption that Dotson had a right to return to work after the completion of her more-than-year-long disability leave.  It starts with a presumption that she did not *unless* she demonstrates the existence of a policy allowing her return.  This starting point is significant as it impacts which party has the burden of establishing the terms of the policy.

---

[3]  It is not clear whether this job protection was granted only to persons out on medical or disability leave, or whether it also extended to other forms of leave.  There is, however, no suggestion that persons with disabilities (or even certain forms of disability) were treated less favorably than other employees with respect to the policy.

[4]  *See* 29 U.S.C. § 2612(a)(1) (FMLA leave provision); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) (striking down regulation which would have granted an additional 12 weeks beyond leave allowed by employer if employer failed to designate earlier-granted leave as FMLA leave).

Here, Avon concedes it had a policy which extended job protection for a period of twelve months. The only proffered evidence is consistent with this concession. There is, moreover, no evidence that any more generous policy (or interpretation of the policy) was applied to persons outside the protected class. In sum, therefore, the evidence suggests that the policy itself was a neutral policy which provided job protection only for a twelve-month period.[5]

**Dotson's coverage under the policy.** To the extent Dotson may be challenging Avon's initial decision to apply its leave policy to her, including advising her of her rights under the policy, her claim fails to satisfy the second element of the *Haulbrook* test. This is because application of the policy is, on its face, the extension of a benefit rather than an adverse employment action and there is no evidence that persons outside the protected class were treated more favorably with respect to the policy. Thus, Avon's decision to cover Dotson under the policy and to advise her of its terms cannot support a claim for disability discrimination.

**Treatment of Dotson at conclusion of twelve-month period**. Dotson does not, in fact, appear to challenge her coverage under the policy. Instead, she challenges its ultimate application, which resulted in her treatment as an inactive employee, required to go through the rehiring process, when she sought to return to work after more than twelve months of leave. For purposes of this order, the court assumes without deciding that this treatment is the equivalent of discharge and, at the least, an adverse employment action. Thus, it would satisfy the second element of Dotson's *prima facie* case.

---

[5] In recommending partial denial of Avon's claim, the Report expresses concern that "the evidence does not conclusively establish the existence of a policy requiring Plaintiff to reapply after being on leave for more than one year." Dkt. No. 77 at 14. For reasons addressed above, the court concludes that this improperly shifted the burden of proof to Avon.

The difficulty Dotson faces when Avon's leave policy is viewed from this end of the time continuum, is that the adverse action was nothing more than the natural (and neutrally applied) result of expiration of the benefit afforded by the underlying policy. Dotson has not proffered any evidence that she was treated differently than other employees who remained on leave more than twelve months. There are, therefore, no circumstances that raise a reasonable inference of unlawful discrimination. It follows that Dotson cannot establish the fourth element of her *prima facie* case.

**Mistakes in notification letter and on attempted return.** This leaves Dotson with an argument that she should be provided with a longer period of protection because of errors contained in the original letter which advised her of the leave policy. Despite the fact Dotson had been out of work since April 11, 2005, the letter stated "[w]e understand that your first day out of work was July 14, 2005." Dkt. No. 45-3 at 24. It then explained "[i]f you remain disabled for 12 months or until **July 14, 2006,** you will become inactive and will need to reapply for employment with Avon." *Id.* (emphasis in original).[6]

Dotson has failed to proffer any evidence that the misstatement at issue was intentional or in any way motivated by a discriminatory intent. Thus, it is a mere mistake which will not support a claim of discrimination. *See Price v. Thompson*, 380 F.3d 209, 215 n. 1 (4th Cir. 2004) (noting that "mere mistakes of fact are not evidence of unlawful discrimination" and citing *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000) ("Pretext is a lie, not merely a mistake.")); *see also DAG Petroleum Suppliers, LLC, v. B.P. PLC,* 268 F. App'x 236, 242 (4th Cir. 2008) (holding that a mistake does not establish pretext).

---

[6]    Although it is not critical to this order, the court notes a possible source of the confusion regarding the date is that Dotson was not approved for short-term disability benefits until July 14, 2005. Dkt. No. 45-1 at 41 (awarding benefits retroactive to April 11, 2005).

Dotson has also proffered evidence that, after she gave notice that she was ready to return (more than twelve months after her leave began), her former immediate supervisor, Rick Nichols ("Nichols"), treated her as if she remained an active employee eligible to return. For example, he invited her to attend a meeting at which she was welcomed back with a cake, asked her to participate in training, and assigned her a car and territory. These circumstances suggest that Nichols was either unaware of the time limitation in the job-protection policy or, like the author of the letter, misunderstood the date on which Dotson would be considered "inactive" and, consequently, would be required to go through the rehire process. Dotson was also placed back on the payroll on the date she indicated she intended to return to work, suggesting the confusion regarding Dotson's eligibility to return went beyond Nichols.[7] Again, however, there is no evidence that any of these mistakes or misunderstandings were motivated by discriminatory intent, much less that they, independently, caused Dotson any harm.[8]

---

[7] The record does not reveal the source of this error.

[8] To the extent based on any of these errors, Dotson's claim is, in effect, a reliance claim. She has not, however, asserted such a claim under state law. Neither has she directed the court to any authority in support of allowing such a claim under the ADA. Even if she did so, it is doubtful her claim could proceed for several reasons.

First, Dotson could only have been injured as a result of her reliance on some action or statement if it caused her to delay her return beyond the protected twelve-month period. This limits the possible basis of a reliance claim to misstatements in the September 2005 letter as any other "misleading" events (such as Nichols' actions) post-dated Dotson's actual inactive date. While the September 2005 letter did misstate the projected inactive date as July 14, 2006, it also disclosed that the period of protection was limited to twelve months from the start of Dotson's leave and disclosed an (incorrect) understanding that Dotson's leave had begun on July 14, 2005. As Dotson was necessarily aware that her leave began much earlier, in April 2005, it is doubtful she could reasonably have relied on the letter as misstating the date she would become inactive.

Second, Dotson would need to prove that she *could have* returned sooner if she had been properly informed. Such proof might well be inconsistent with her continuation on disability until May 1, 2006.

Dotson's discrimination claim, therefore, fails to the extent based on Avon's decision to require her to go through the rehiring process. This is true regardless of whether the focus is on the initial letter or the later neutral enforcement of the time limits.[9]

### 3.    Decision Not to Rehire

The court reaches a different conclusion to the extent Dotson's claim rests on the decision not to rehire her. For reasons explained in the Report, there is evidence to support Dotson as to each element of her *prima facie* case with respect to the ultimate decision not to offer her a position. This evidence is sufficient to raise genuine issues of material fact as to this aspect of Dotson's ADA discrimination claim, thus precluding summary judgment.

The court finds Dotson's testimony regarding comments Nichols made after Dotson sought to return to work of particular significance. Most critically, Dotson testified that on May 8, 2006, Nichols informed her "he wasn't sure [she] was going to be allowed to return to work as the new HR person [Judith A. Wright ("Wright")] had not had good results with rehires." Dotson dep. at 59; *see also id.* at 64. When he informed Dotson that she would not be allowed to return, Nichols stated that Wright had convinced the ultimate decision maker, Harold Watkins, that "there is not a good success rate when you bring people back." Dkt. No. 62-1 at 38 (Ex. 6 to Dotson dep.). These comments may indicate a bias against employees who have taken extended leaves of absence due to disability (thus, bias based on a history or perception of disability).[10] Combined with other evidence discussed in the

---

[9] In denying Avon's earlier motion to dismiss, the court found Dotson's allegations sufficient to allow the ADA discrimination claim to proceed. The court did not, at that stage, distinguish between Avon's decision to require Dotson to go through the rehire process, and its decision not to rehire her.

[10] Wright denies having made this statement. For purposes of this order, however, the court accepts as true that Nichols advised Dotson that these comments were made and assumes that Nichols' statement may be treated as a party admission (because he made the statement as Avon's agent).

Report, this is enough raise a reasonable inference that Dotson was not rehired because of her history of disability or Avon's perception of her as disabled).

### 4.    Punitive Damages

The court also adopts the rationale and recommendation of the Report, over Avon's objections, as to Dotson's pursuit of punitive damages, limited to the surviving aspect of her disability discrimination claim. As appropriate, the court may reconsider this issue and Avon's other arguments at trial on motion for judgment as a matter of law. The present record is not, however, so clear as to preclude the possibility of a punitive damage award.

### B.    ADA Retaliation Claim

Dotson objects to the recommendation that Avon's motion for summary judgment be granted as to her claim of retaliation. The court finds this objection to be without merit and, therefore, grants Avon's motion as to this claim for the reasons set forth in the Report and as supplemented here.

As noted in the Report, Dotson "was reactivated in [Avon's] payroll system and began to receive payroll checks and employment benefits in May 2006." Dkt. No. 77 at 4. She continued to receive these checks and related benefits until November 2006, even though she was not working. *Id.* (also noting that Dotson did not contact Avon about the payments even though she did not know why she was receiving them). Dotson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2006, alleging that Avon had refused to continue her employment (or rehire her) because of her disability (or history of disability). *Id.* The payments stopped several weeks later.[11]

---

[11] Dotson does not make specific objection to these facts as stated in the Report. She argues, nonetheless, that she remained "officially . . . employed," because she was never given official

(continued...)

11

To establish a *prima facie* case of retaliation under the ADA, Dotson must show that: (1) she engaged in a protected activity; (2) her employer took a materially adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. *See, e.g., King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003) (addressing claim for retaliation under Title VII). An action is materially adverse if a reasonable employee would have found it to be so, meaning that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). If the employee makes out the *prima facie* case, the burden shifts to the employer to offer a legitimate non-retaliatory reason for its actions, shifting the burden back to the employee to prove the employer's proffered reason is pretextual. *King,* 328 F.3d at 150-51.

Taken in the light most favorable to Dotson, the proffered evidence supports following relevant inferences: (1) Avon reactivated Dotson on the payroll in May 2006; (2) Avon, thereafter, made payments and provided benefits to Dotson as if she was an employee until sometime in November 2006, even though Dotson was not working for Avon during this period; (3) around the time her pay was reactivated, Dotson was advised she would have to go through the rehire process; (4) Dotson was later informed orally that she would not be rehired; (5) despite knowing that she had

---

[11](...continued)

notification of her "termination" and because she continued to receive payments until after she filed her charge of discrimination. *Id.* There is, however, no evidence to support either the conclusion that Dotson was "terminated," as opposed to automatically being deemed inactive after twelve months of leave, or that reinstatement of pay was other than a mistake. Dotson also testified that her supervisor informed her she would not be returning to work and that she "was not allowed to return to work." Dkt. No. 78 at 2-3 (citing her own deposition); Dotson dep. at 187 (stating Nichols informed her "I was absolutely not going to be coming back [on] May 12."). Under these circumstances, the proffered evidence cannot support a reasonable inference that Dotson, in fact, remained employed when she filed her charge of discrimination (challenging Avon's refusal to continue her employment and/or rehire her).

not been rehired, Dotson did not contact Avon to question her continued receipt of pay and benefits; (6) Dotson filed a charge of discrimination with the EEOC in late October 2006; and (7) Avon stopped making payments to Dotson sometime in November 2006.

These circumstances do not support a claim for retaliation for at least two reasons. First, no inference of a causal connection (third element) arises despite the close temporal connection between the protected activity and cessation of payments because uncontroverted evidence establishes that the payments were being made in error. It follows that Avon would have stopped making the payments whenever it discovered the error, regardless of how the discovery occurred. Thus, it is the *fact of discovery*, which happened to occur because of the protected activity, rather than the protected activity itself which motivated Avon's termination of payments.[12]

Second, the cessation of mistaken pay is not a materially adverse action (second element) because it would not have dissuaded a reasonable employee from filing the charge. *See generally A Society Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011) (holding in non-employment ADA action that "retracting a gratuitous promise does not amount to a discriminatory act or an adverse action"); *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482-84 (4th Cir. 1996) (holding that an employer's revocation of gratuitous healthcare benefits did not violate ERISA's anti-retaliation provision).[13] Both *Society Without A Name* and *Stiltner* involved gratuitous benefits. The pay and benefits at issue in this action were provided by mistake. Because an employer may pursue

---

[12] Even if this did not preclude Dotson from establishing her *prima facie* case, it would defeat the claim at the pretext stage.

[13] In *Society Without A Name*, the Fourth Circuit relied on *Stiltner*, noting that ERISA and the ADA used identical language ("discriminate against") in describing what constituted an adverse action. *Society Without A Name*, 655 F.3d at 351.

return of mistaken pay and benefits, but not gratuitous benefits, the former are inherently of less value than the latter. It follows that correction of a mistake is even less likely to be considered an adverse action than cessation of a gratuity.[14]

For the reasons set forth above and in the Report, the court finds that Dotson has failed to make out a *prima facie* case in support of her retaliation claim. In the alternative, the court finds that the claim would fail because there is no evidence that Avon's proffered legitimate reason for terminating payments and benefits (that they were being paid by mistake) was pretextual.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation in part, as modified and supplemented above, denies Dotson's motion for summary judgment, grants Avon's motion for summary judgment in part (as to Dotson's claims for retaliation and claim for disability discrimination to the extent based on treatment of Dotson as an inactive employee required to go through the rehiring process), and denies Avon's motion in part (as to Dotson's claim for disability

---

[14] The court's conclusion here is consistent with the treatment of after-acquired evidence of a legitimate basis for termination in cases alleging discriminatory termination. *See, e.g., McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352 (1995). In *McKennon*, the Court held that "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." *Id.* at 362. It, therefore, directed trial courts to begin their calculation of backpay awards in such cases by determining the amount which would have been paid "from the date of the unlawful discharge to the date the new information was discovered," subject to adjustment for "extraordinary equitable circumstances." *Id.* at 362-63 (requiring employer to first establish "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge"); *see also Miller v. AT&T Corp.*, 250 F.3d 820, 836-38 (4th Cir. 2001) (applying *McKennon*, but finding it did not preclude recovery where employee was entitled to protection for the same period under the Family Medical Leave Act).

discrimination to the extent based on the decision not to rehire her and to the extent Dotson seeks

punitive damages with respect to that claim).

The matter shall proceed to trial under the following schedule:

1.    Within seven days following entry of this order, the parties shall confer regarding the inquiries in paragraph two below and whether to reconvene mediation, by phone or otherwise.  If the parties agree to reconvene mediation, they shall set a date for the same.

2.    Within fourteen days following entry of this order, the parties shall advise the court whether they intend to reconvene mediation and, if so, when, and shall also advise the court of the anticipated length of trial and whether the remaining claim(s) should be tried jury or non-jury.  A joint report is encouraged but not required.

3.    Within twenty-one days following entry of this order, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures.  Within fourteen days thereafter, a party shall file and exchange Fed. R. Civ. P. 26(a)(3) objections, any objections to use of a deposition designated by another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(4).  *See* Local Civil Rule 30.03(J) (video deposition additional requirements).

4.    Motions in limine must be filed at least fourteen days prior to jury selection.

5.    The parties shall file pretrial briefs seven days prior to the date set for jury selection (Local Civil Rule 26.05).[15]  Attorneys shall meet at least seven days prior to the date set for submission of pretrial briefs for the purpose of exchanging and marking all exhibits.  *See* Local Civil Rule 26.07.

6.    This case shall be called for trial during the term of court beginning with jury selection on November 2, 2012.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 16, 2012

---

[15]  Judge Currie requires that pretrial briefs be filed with the Clerk of Court as part of the public record and served on opposing parties.

15